UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS ELYA,

       Plaintiff,                              Hon. Wendell A. Miles

v.                                         Case No. 1:04-CV-359

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner determined that Plaintiff is not disabled as defined by the Act.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 54 years of age at the time of the ALJ's decision. (Tr. 16). He successfully completed high school and worked previously as a hazardous waste technician and machine operator. (Tr. 16, 87, 92, 108-11).

Plaintiff applied for benefits on October 26, 2002, alleging that he had been disabled since June 18, 2002, due to chronic obstructive pulmonary disease (COPD), asthma, and atrial fibrillation. (Tr. 68-70, 86). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 22-67). On October 17, 2003, Plaintiff appeared before ALJ Daniel Dadabo, with testimony being offered by Plaintiff and vocational expert, Tom Grzesik. (Tr. 264-90). In a written decision dated December 31, 2003, the ALJ determined that Plaintiff was not disabled. (Tr. 15-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **MEDICAL HISTORY**

I.        Hepatitis C

On December 10, 1999, Plaintiff underwent a liver biopsy, the results of which were "consistent with chronic Hepatitis C." (Tr. 158-59). Plaintiff subsequently began undergoing treatment for his Hepatitis. (Tr. 153-56). Treatment notes dated August 7, 2000, indicate that Plaintiff's hepatitis was "in remission." (Tr. 153).

On November 17, 2000, Plaintiff was examined by Dr. Paul Farr, who reported that Plaintiff "has had a relapse of his hepatitis C." (Tr. 152). The results of an examination were unremarkable and the doctor reported that Plaintiff's "symptoms have not changed a great deal." Dr. Farr advised against resuming Plaintiff's hepatitis treatment because "it will have no lasting effect" and, furthermore, because Plaintiff became "very sick" while undergoing treatment. The doctor suggested that Plaintiff forego further treatment until a new medication was available. *Id.*

On July 2, 2001, Plaintiff was examined by Dr. Farr. (Tr. 151). Plaintiff reported that he was feeling "quite well." The results of an examination were unremarkable and the doctor observed that Plaintiff was experiencing "no direct symptoms from his hepatitis." *Id.*

On May 29, 2002, Plaintiff resumed hepatitis treatment with a new medication, but discontinued this treatment after one week due to the side effects of the medication. (Tr. 145).

II.       Asthma and COPD

On April 9, 2001, Plaintiff was examined by physician's assistant, William Brinkmeier. (Tr. 201). Plaintiff reported that he was experiencing shortness of breath as well as difficulty sleeping. An examination revealed "occasional wheezes and rhonci in the bases.

Decreased air movement. No accessory muscle use." Plaintiff was prescribed Prednisone and a nebulizer. *Id.*

Treatment notes dated May 4, 2001, characterized Plaintiff's asthma as "mild intermittent." (Tr. 196). Plaintiff reported that his asthma was "better." (Tr. 195). Plaintiff was instructed to continue his medication. (Tr. 196).

On June 13, 2001, Plaintiff reported that his asthma was "better" and that he was experiencing no "problems" or "side effects" from his asthma medications. (Tr. 191). On July 17, 2001, Plaintiff again reported that his asthma was "better." (Tr. 187). He further reported that he did not experience asthma symptoms when exercising and that he was experiencing no "problems" or "side effects" from his asthma medications. *Id.*

Treatment notes dated November 9, 2001, indicate that Plaintiff was presently suffering from "moderate" to "severe" asthma. (Tr. 185). In response, Plaintiff's medication regimen was modified. *Id.* Treatment notes dated March 27, 2002, indicate that Plaintiff was presently suffering from "severe" asthma. (Tr. 180). In response, Plaintiff's medication regimen was again modified. *Id.*

The results of a December 31, 2002 examination were unremarkable and Plaintiff was experiencing "no distress." (Tr. 169). Plaintiff reported that his asthma did not limit his activities. (Tr. 168). Plaintiff's asthma was characterized as "mild persistent." (Tr. 169).

The results of a January 21, 2003 examination were unremarkable. (Tr. 239). Plaintiff's chest was "clear" and he was experiencing "no distress." Plaintiff's asthma was characterized as "severe." *Id.*

Treatment notes dated April 4, 2003, indicate that Plaintiff was suffering from chest congestion and shortness of breath. (Tr. 237). The results of an examination were unremarkable and Plaintiff was experiencing "no distress." The examiner concluded that Plaintiff was suffering from COPD/bronchitis. *Id.*

On June 6, 2003, Plaintiff was examined by Dr. Mona Merritt. (Tr. 246). Plaintiff reported that his asthma symptoms "have started worsening" with "more shortness of breath" and "increased cough." An examination revealed that Plaintiff's lungs were "clear to auscultation bilaterally." The doctor reported "decreased breath sounds noticed at the bases, however good aeration otherwise heard." An examination of Plaintiff's heart revealed regular rate and rhythm without murmur. Plaintiff reported that he "has been on Prednisone tapers in the past when he starts to feel this way which helps to improve his symptoms." Dr. Merritt prescribed a Prednisone taper for Plaintiff to treat his asthma symptoms. *Id.*

On August 21, 2003, Plaintiff reported that his asthma was "better" or "same." (Tr. 252). He reported that his asthma did not limit any of his activities. Plaintiff also reported that he was not experiencing any "problems" or "side effects" from his medication. *Id.*

III.     Additional Evidence

On January 14, 2003, Plaintiff completed a questionnaire regarding his activities. (Tr. 115-18). Plaintiff reported that he cooks, dusts, washes dishes, washes laundry, shops, drives, reads, watches television, and goes bowling. *Id.*

On January 18, 2003, Plaintiff's brother completed a questionnaire regarding Plaintiff's activities. (Tr. 122-27). According to his brother, on a typical day Plaintiff cooks, cleans

his residence, washes dishes, surfs the internet, watches television, performs crossword puzzles "by the dozens," goes shopping, and cares for his personal needs. (Tr. 122-25). Plaintiff's brother also reported that Plaintiff drives, reads, fixes things, plays cards, visits relatives, and goes bowling. *Id.*

Plaintiff testified that he discontinued working in June 2002. (Tr. 268-69). He reported that he stopped working because he was laid off - not because he was incapable of working. (Tr. 270). Plaintiff reported that he can stand for 60-90 minutes, walk one mile, and lift 25 pounds. (Tr. 274-75). Plaintiff testified that he performs "a lot of housework and a lot of cleaning." (Tr. 275). Plaintiff reported that he has not applied for a new job because it would disqualify him from receiving unemployment benefits. (Tr. 275-76).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) Hepatitis C, with status post two abbreviated series of Interferon treatment, (2) asthma, and (3) alcohol and intravenous drug abuse in remission. (Tr. 17). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

#### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[2] subject to the following restrictions: (1) he can only occasionally climb or crawl, and (2) he must work in an environment free of excessive pulmonary irritants and temperature extremes. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Tom Grzesik.

The vocational expert testified that there existed approximately 5,800 unskilled jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 287-88). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff "was not a reliable witness in his own behalf, and that his impairments reasonably would not be expected to cause symptoms of the intensity or restriction that he asserts." (Tr. 17-18). Plaintiff argues that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is]

10

disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony") (citations omitted). It is not for this Court to reevaluate such evidence

anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

Plaintiff testified that he was able to maintain his previous employment only because he was permitted to take breaks at will and have certain duties assigned to co-workers. (Tr. 277-84). As the ALJ observed, however, Plaintiff has submitted no evidence to support his assertions. (Tr. 17). As the ALJ further noted, "it seems improbable that a for-profit employer would extend itself this charitably for over twenty years in today's economy, and. . .would call a person back to sheltered work after laying him off once." *Id.* Thus, the ALJ properly rejected Plaintiff's claim that his past relevant work is more properly characterized as "sheltered work." As for Plaintiff's subjective allegations of pain and limitation, the ALJ correctly concluded that such were contradicted by the objective medical evidence as well as Plaintiff's reported activities. In sum, there exists substantial evidence to support the ALJ's credibility determination.

b. Plaintiff is not Disabled Pursuant to the Grids

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404,

Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998).

When utilizing the grids, "the claimant's age as of the time of the decision governs." *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). At the time the ALJ rendered his decision, Plaintiff was almost nine months away from his 55th birthday.[3] Pursuant to the grids, a claimant 54 years of age is considered to be "closely approaching advanced age," whereas a claimant 55 years of age is considered to be of "advanced age." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.00(f)-(g).

Plaintiff asserts that despite the fact that he was only 54 years of age as of the date of the ALJ's decision, the ALJ improperly failed to consider him to be of "advanced age." Plaintiff further asserts that if considered to be of "advanced age" a finding that he is disabled would be mandated by the grids.

While the ALJ did not rely on the grids in making his decision, he concluded that Plaintiff fit within the framework of Rule 202.14, the provision for claimants "closely approaching advanced age" whose prior work experience is "skilled or semi-skilled," but is not transferable to jobs within his RFC. 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 202.14. Pursuant to this particular Rule, Plaintiff is considered "not disabled." *Id.* If Plaintiff were considered to be of "advanced age," however, he would be considered disabled. 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 202.06.

---

[3] The ALJ rendered his decision on December 31, 2003, and Plaintiff turned 55 years old on September 21, 2004.

While Plaintiff's age as of the time of the ALJ's decision governs, the relevant regulations also provide that in a "borderline situation," the age categories are not to be applied "mechanically."  20 C.F.R. § 404.1563(a).  While the regulations do not define the phrase "borderline situation," guidance is provided by two Appeals Council interpretations contained in the SSA Hearings, Appeals and Litigation Law Manual ("HALLEX").  *See Russell*, 20 F. Supp.2d at 1134.  These two interpretations provide the following:

> First, in Appeals Council Interpretation II-5-3-2 (effective Mar. 16, 1979), the issue presented is "[h]ow far in advance of attainment of a specific age category . . . may [the grids] pertinent to that category be applied?"  In its interpretation, the Appeals Council states that "[g]enerally, establishing an onset date up to six months prior to attainment of the specified age would be reasonable."
>
> Interpretation II-5-3-2(A)(effective Nov. 2, 1993), answers the question "[w]hat is a borderline age situation and what factors should be considered when determining whether to use a higher age than a claimant's chronological age when applying [the Grids]?"  The Interpretation states that:
>
> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test:
>
> (1) Determine whether the claimant's age is within a few days or a few months of a higher age category.
>
> (2) If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."
>
> If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
>
> If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age.  (Use of the higher age category is not automatic.)

>  *Russell*, 20 F. Supp.2d at 1135.

Several other courts have addressed this issue. *See Leyba v. Chater*, 983 F. Supp. 1048 (D.N.M. 1996) (three-and-one-half months presents a borderline situation); *Davis v. Shalala*, 883 F. Supp. 828 (E.D.N.Y. 1995) (three months is borderline); *Hill v. Sullivan*, 769 F. Supp. 467 (W.D.N.Y. 1991) (three months and two days borderline); *Roush v. Heckler*, 632 F. Supp. 710 (S.D. Ohio 1984) (six months is borderline); *see also, Daniels v. Apfel*, 154 F.3d 1129 (10th Cir. 1998) ("a borderline situation exists when there would be a shift in results caused by the passage of a few days or months"); *but see*, *Lambert v. Chater*, 96 F.3d 469 (10th Cir. 1996) (seven months not borderline). Furthermore, as recognized in Appeals Council Interpretation II-5-3-2:

> Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age - even when the time period is only a few days.

Application of the Medical-Vocational Guidelines in Borderline Age Situations, available at, http://www.ssa.gov/OP_Home/hallex/II-05/II-5-3-2.html (last visited May 31, 2005).

Plaintiff has not identified any "additional adversities" which would justify placing him in the higher age category. Accordingly, based on the authority identified above, the Court finds that Plaintiff's situation does not present a "borderline situation." The ALJ properly considered Plaintiff to be "closely approaching advanced age" and, therefore, Plaintiff is not considered disabled pursuant to the grids.

## CONCLUSION

For the reasons articulated herein, I conclude that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, I recommend that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: June 6, 2005                                                  /s/ Ellen S. Carmody
                                                                                     ELLEN S. CARMODY
                                                                                     United States Magistrate Judge